**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **LEMONT LOVE**, et al., : | |
| : | |
| Plaintiffs, : | |
| : | |
| v. : | Civ. Action No.: 14-1313 (FLW)(TJB) |
| : | |
| **NEW JERSEY STATE POLICE**, et al., : | **OPINION** |
| : | |
| Defendants. : | |

This action arises from the search and arrest of *pro se* Plaintiffs Lemont Love and Andre Love (collectively, "Primary Plaintiffs") by Defendant New Jersey state troopers Vincent Castellani and Mark Fuentes (collectively, "Trooper Defendants"), allegedly based on Trooper Defendants' racial profiling of Primary Plaintiffs, as well as Trooper Defendants' alleged fabrication of evidence, which ultimately resulted in the conviction of Primary Plaintiffs for possession of a controlled substance with intent to distribute. Primary Plaintiffs bring numerous claims against various counties, state agencies, and state officials[1] (collectively, "Defendants"),

---

[1] Plaintiffs bring claims against the New Jersey State Police; the State of New Jersey; Bergen County; the Bergen County Prosecutor's Office; Middlesex County; the Middlesex County Prosecutor's Office; Vincent Castellani, in his official capacity as a New Jersey state trooper and in his individual capacity; Mark Kepenis, in his official capacity as a New Jersey state trooper and in his individual capacity; Rick Fuentes, in his official capacity as the Chief of the New Jersey state troopers and in his individual capacity; Christopher Kuberiet, in his official capacity as a Middlesex County assistant prosecutor and in his individual capacity; Andrew Carey, in his official capacity as a Middlesex County prosecutor and in his individual capacity; the New Jersey Attorney General's Office; John J. Hoffman, in his official capacity as New Jersey's acting Attorney General and in his individual capacity; John Molinelli, in his official capacity as a Bergen County prosecutor and in his individual capacity; Glenn Berman, in his official capacity as a "former"

including claims for violation of Primary Plaintiffs' constitutional rights, unlawful search and seizure, false arrest, malicious prosecution, and federal RICO.[2] Additionally, *pro se* Plaintiff Corrine Love (together with Primary Plaintiffs, "Plaintiffs"), the wife of Plaintiff Andre Love, brings claims against Defendants for violation of her constitutional rights, through their violation of Plaintiff Andre Love's constitutional rights. And, finally, Plaintiff Lemont Love brings claims on behalf of his minor daughter, J.L., against Defendants for violation of her constitutional rights, by means of violating Plaintiff Lemont Love's constitutional rights.[3]

Currently pending before this Court are three motions to dismiss filed respectively by Defendant Bergen County, Defendant Monmouth County, and the Defendant state agencies and officials ("State Defendants")[4] (collectively, "Moving Defendants").[5] Moving Defendants move to dismiss the Complaint, pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon

---

Middlesex County prosecutor and in his individual capacity; Monmouth County; the Monmouth County Prosecutor's Office; Christopher Gramiccioni, in his official capacity as a Monmouth County prosecutor and in his individual capacity; and Susan O'Donnell-Voorman, in her official capacity as an assistant Monmouth County prosecutor and in her individual capacity.

[2] The term "RICO" relates to organizations which may be in violation of the federal Racketeer Influenced and Corrupt Organizations Act (the "RICO Act"). *See, e.g.,* 18 U.S.C. § 1962(c).

[3] Because Plaintiff J.L. is a minor, she cannot bring claims on her own behalf. *See Osei-Afriyie by Osei-Afriyie v. Med. Coll. of Pennsylvania*, 937 F.2d 876, 882-89 (3d Cir. 1991)*, see also* Fed. R. Civ. P. 17(b). Therefore, the Court will not consider any filings made by Plaintiff J.L. herself, and will treat the claims asserted by her in the Complaint as having been asserted on her behalf by her father, Plaintiff Lemont Love.

[4] The State Defendants are: the New Jersey State Police, the State of New Jersey, the Bergen County Prosecutor's Office, the Middlesex County Prosecutor's Office, Vincent Castellani, Mark Kepenis, Rick Fuentes, Christopher Kuberiet, Andrew Carey, the New Jersey Attorney General's Office, John J. Hoffman, John Molinelli, Glenn Berman, the Monmouth County Prosecutor's Office, Christopher Gramiccioni, and Susan O'Donnell-Voorman.

[5] The Court notes that all Defendants, except Defendant Middlesex County, have moved to dismiss the Complaint. Although Defendant Middlesex County appears to have been duly served on August 26, 2014, it has since failed to enter an appearance, file an answer, or otherwise move.

which relief can be granted. Additionally, State Defendants move to dismiss the Complaint, pursuant to Fed. R. Civ. P. 12(b)(1), for lack of subject-matter jurisdiction.

For the reasons set forth below, the motions to dismiss are granted as follows: Plaintiff J.L.'s claims against Defendants are dismissed without prejudice, Plaintiff Corrine Love's claims against Defendants are dismissed with prejudice, and Primary Plaintiffs' claims against Moving Defendants are dismissed with prejudice.

### I.   Procedural and Factual Background

The following allegations are taken from the Complaint and are assumed as true for the purposes of review under Rule 12(b)(6).

On January 17, 1998, Primary Plaintiffs were driving on the New Jersey Turnpike[6] when Trooper Defendants pulled them over, allegedly, solely on the basis of Primary Plaintiffs' race.[7] Compl. at 8, 12.[8] According to the Complaint, Trooper Defendants then proceeded to search both Primary Plaintiffs' persons and their car "[w]ithout a warrant, consent or probable cause." Compl. at 12. Next, despite the fact that these searches allegedly "didn't lead to the discovery of any contraband," Primary Plaintiffs were transported to Trooper Defendants' headquarters where they were informed that they had been arrested for possession of a controlled dangerous substance with intent to distribute. Compl. at 12.

---

[6] Although the Complaint only specifies that Primary Plaintiffs were driving on the "turnpike," for the purposes of this Opinion, the Court assumes that Plaintiffs refer to the New Jersey Turnpike, because Primary Plaintiffs' subsequent prosecutions and convictions occurred in New Jersey.

[7] The Court notes that the Complaint does not allege the race of Primary Plaintiffs.

[8] I cite to page numbers, rather than paragraph numbers, because the paragraphs in the Complaint are not individually numbered.

Plaintiffs allege that Defendant Castellani falsely claimed to have found contraband as a result of his search of Primary Plaintiffs and their car. Compl. at 8. Moreover, Defendant Castellani is alleged to have "destroyed the video evidence" of that search and "falsified his police report" in an attempt to "cover up his misconduct." Compl. at 8. Additionally, Defendant Kepenis purportedly "tried to cover up his misconduct by supporting Defendant Castellani's fabricated version of events." Compl. at 8.

Subsequently, Primary Plaintiffs were formally charged with possession of a controlled dangerous substance with intent to distribute. Compl. Ex. A. According to the Complaint, Plaintiff Andre Love's prosecution was led by Monmouth County assistant prosecutor, Defendant O'Donnell-Voorman. Compl. at 12. Defendant O'Donnell-Voorman allegedly "fabricated evidence during the preliminary investigation[,] along with Defendants Castellani and Kepenis, to prosecute [Plaintiff Lemont Love] based on race." Compl. at 12. Ultimately, on March 9, 1998, Plaintiff Andre Love pled guilty to one count of possession of cocaine with intent to distribute, pursuant to N.J. Stat. Ann. 2C:35-5a(1), 5b(2). Compl. Ex. A. And, on June 25, 1998, he was sentenced to three years of imprisonment and ordered to pay fines and penalties totaling $2205. Compl. Ex. A. Several months later, upon a motion to reconsider sentence, on December 18, 1998, Plaintiff Andre Love's sentence was reduced to five years of probation, during which he was required to "enter [a] long term (6 mos) inpatient program." Compl. Ex. A. Plaintiff Andre Love asserts that he served his sentence, and paid the ordered fines and penalties. Compl. at 12. Thus, under the facts alleged, Plaintiff Andre Love completed his sentence by December 18, 2003.

According to the Complaint, Plaintiff Lemont Love's prosecution was originally led by prosecutors in the Bergen County Prosecutor's Office, who allegedly "initiated a formal malicious prosecution" against him "based on the false claims concocted by the Troopers." Compl. at 13-14.

4

Plaintiff Lemont Love's case was then transferred from Bergen County to Monmouth County, where the Monmouth County Prosecutor's Office purportedly "continued this malicious prosecution before transferring it." Compl. at 14. Plaintiff Lemont Love's case was transferred to Middlesex County, where Middlesex County assistant prosecutor, Defendant Kuberiet, handled his prosecution. Compl. at 14. It is alleged that Middlesex County prosecutor, Defendant Berman, assigned the case to Defendant Kuberiet, who, purportedly, due to racist motivations, continued the alleged malicious prosecution of Plaintiff Lemont Love. Compl. at 14. On March 11, 1999, Plaintiff Lemont Love pled guilty to one count of possession of a controlled dangerous substance with intent to distribute, pursuant to N.J. Stat. Ann. 2C:35-10a(1). Compl. Ex. A. On May 14, 1999, he was sentenced to five years of imprisonment and ordered to pay fines and penalties totaling $2705. Compl. Ex. A. Plaintiff Lemont Love asserts that he served a total of four years of his sentence, before he was released. Compl. at 14. Thus, under the facts alleged, Plaintiff Lemont Love was released from prison by May 14, 2003, and presumptively completed his subsequent probation by May 14, 2004.

Meanwhile, on April 19, 2002, the State of New Jersey filed motions to dismiss indictments and vacate convictions in a large number of cases involving allegations of selective enforcement, based on disclosures made in a state report regarding the practice of racial profiling by the state police along the New Jersey Turnpike between January 1, 1988 and April 20, 1999. Compl. Ex. C. Although in these motions, the State did not concede that racial profiling had occurred, it explained that because it "appear[ed] one could argue and a conclusion could be reached by the court that colorable issues of racial profiling [were] present in each case," therefore, it was in the interests of justice to vacate the convictions and dismiss the indictments, rather than litigating each

case in full. Compl. Ex. C. The state's motions were granted by the Honorable Walter R. Barisonek, J.S.C., on the day they were filed. Compl. Ex. C.

Over ten years later, on July 14, 2012, Plaintiff Lemont Love's attorney applied to the Superior Court of New Jersey, Law Division, Middlesex County to vacate and dismiss Plaintiff Lemont Love's conviction, based on the racial profiling carried out by the state police, outlined in the state's report, during the time of his arrest. Compl. at 14, Ex. C. On July 24, 2012, the State of New Jersey moved to supersede the county prosecutor in the case. Compl. at 14, Ex. B. Thereafter, on July 27, 2012, Deputy Attorney General Paul Heinzel moved to vacate Plaintiff Lemont Love's 1999 conviction. Compl. Ex. C. In support of this motion, Deputy Attorney General Heinzel provided a certification explaining the following:

> 2. The above captioned-matter has currently pending an application for post-conviction relief for defendant Love based on allegations of selective enforcement concerning the New Jersey State Police.
> 3. On April 19, 2002, the State of New Jersey filed motions to dismiss indictments and vacate convictions in a large number of cases involving similar claims of racial profiling by the State Police, including cases originating out of Middlesex County. (See attached affidavit in support of those motions). Those motions were granted by the Honorable Walter R. Barisonek, J.S.C., (the judge having exclusive, statewide jurisdiction concerning discovery applications regarding claims of selective enforcement pertaining to the State Police) on the same day. Judge Barisonek no longer has jurisdiction over these issues.
> 4. I have reviewed this file and have concluded that there is no basis to differentiate between this case and the cases that were dismissed before Judge Barisonek. Like the cases dismissed there, this case falls within the relevant time frame for which defendants making such claims had made a colorable basis showing, entitling them to selective enforcement discovery.[9] Accordingly, for the reasons underlying its application to dismiss the cases pending before Judge Barisonek, the State hereby moves to dismiss the accusation and vacate the conviction entered in this matter against defendant Lemont Love.

---

[9] Plaintiffs allege that the State of New Jersey "conceded that [Primary] Plaintiff's [sic] conviction was the result of racial profiling," Compl. at 12, but the truth of this statement is belied by the actual language of the State of New Jersey's submissions, *see* Compl. Ex. C.

6

Compl. Ex. C. The motion was granted by the Honorable Alan A. Rockoff, J.S.C., on August 2, 2012. Compl. Ex. D. Thereafter, on or about September 10, 2012, Plaintiff Lemont Love filed a notice of tort claim with the State of New Jersey. Compl. Ex. E. His demand for money damages was denied. Compl. at 14.

Similarly, on March 14, 2013, Plaintiff Andre Love's conviction was vacated for similar reasons by the Superior Court of New Jersey, Law Division, Bergen County. Compl. Ex. D. The order, signed by the Honorable Eugene H. Austin, J.S.C., reads as follows:

> This matter having been opened to the Court by Andre Love, pro se, by way of motion to vacate judgment of conviction and the underlying charges in Accusation 98-03-0449, based on a claim of racial profiling, and the State, by Senior Assistant Prosecutor Annmarie Cozzi on behalf of Bergen County Prosecutor John L. Molinelli, having filed a written response asking for relief and the Court having reviewed the written submissions of the parties . . . [it is] ORDERED that the conviction against defendant Andre Love is hereby vacated and Accusation 98-03-049 are hereby dismissed with prejudice.

Compl. Ex. D (emphasis in original).

On February 28, 2014, Plaintiffs filed the present Complaint. According to the Complaint, "all of the named defendants either directly participated in racially profiling [Primary] Plaintiffs or were aware of the claims raised in this complaint and failed to act despite receiving numerous complaints." Compl. at 12. Moreover, Plaintiffs claim that "Defendants Castellani, Kepenis, Kuberiet, Carey, Berman, Molinelli, Gramiccioni and O'Donnell-Voormen prosecuted [Primary Plaintiffs] based on considerations of race." Compl. at 12. Furthermore, Plaintiffs assert that "defendants New Jersey State Police, State of New Jersey, Bergen County, Bergen County Prosecutor's Office, Middlesex County, Middlesex County Prosecutor's Office, Fuentes, Carey, New Jersey Attorney General's Office, Hoffman, Molinelli, Berman, Monmouth County, Monmouth County Prosecutor's Office, and Gramiccioni were placed on notice of [their

subordinates'] selective enforcement of claims by numerous complaints and failed to curb [their subordinates'] behavior. Compl. at 12.

Primary Plaintiffs assert the following claims against Trooper Defendants: (1) selective enforcement of law, based on considerations of race, in violation of the Fifth, Eighth, and Fourteenth Amendments of the United States Constitution;[10] (2) unreasonable search and seizure in violation of the Fourth Amendment of the United States Constitution; (3) false arrest in violation of the Fourth Amendment; and (4) deprivation of Primary Plaintiffs' "life, liberty, or property without due process of law" in violation of the Fifth and Fourteenth Amendments. Compl. at 14-18. Primary Plaintiffs also assert the following claims against Defendants Molinelli, Gramiccioni, Berman, Kuberiet, O'Donnell-Voorman, Carey, Castellani, and Kepenis: (1) malicious and selective prosecution of Primary Plaintiffs in violation of the Fifth, Eighth, and Fourteenth Amendments; (2) cruel and unusual punishment in violation of the Eighth Amendment (3) deprivation of Primary Plaintiffs "life, liberty, or property without due process of law," in violation of the Fifth and Fourteenth Amendments; (4) wrongful imprisonment under the law of New Jersey; (5) racial discrimination under the law of New Jersey; (6) intentional infliction of emotional distress under the law of New Jersey; and (7) malicious prosecution under the law of New Jersey. Compl. at 15-17.

Additionally, Primary Plaintiffs allege that the failure of Defendants Berman, the State of New Jersey, Bergen County, Middlesex County, Monmouth County, Fuentes, the New Jersey Attorney General's Office, and Hoffman to adequately train or supervise their defendant

---

[10] Although Plaintiffs do not explicitly bring their constitutional claims under 42 U.S.C. § 1983, because there is no direct cause of action under the United States Constitution, the Court construes their claims as such. *See Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (The pleadings of *pro se* plaintiffs should be "liberally construed.").

subordinates "constituted deliberate indifference and contributed to and proximately caused the violations of [Primary Plaintiffs'] constitutional rights." Compl. 16-17.

Finally, Primary Plaintiffs assert claims for federal RICO against Defendants Castellani, Kepenis, Fuentes, Kuberiet, Carey, Hoffman, Molinelli, O'Donnell-Voorman, Berman, and Gramiccioni. Compl. at 20-27. Primary Plaintiffs contend that these Defendants committed various acts of mail fraud, wire fraud, extortion, obstruction of justice, and obstruction of a criminal investigation in furtherance of their criminal enterprise through their alleged selective enforcement, racial profiling, illegal search and seizure, false arrest, false imprisonment, malicious prosecution, selective prosecution, racial discrimination, filing false government documents, theft by way of imposing fines and penalties, and conspiracy to commit the above alleged acts. Compl. at 20-27. Primary Plaintiffs allege that due to these Defendants' acts of RICO (1) they were unable to work or seek employment; (2) their credit score was damaged because they were unable to pay their credit card bills; (3) they were unable to pay school loans, rent, insurance, or car payments; and (4) their brother died.[11] Compl. at 27.

The Complaint also includes claims by Plaintiff Corrine Love, and on behalf of Plaintiff J.L., against Defendants for intentionally causing these plaintiffs severe emotional distress by maliciously and selectively prosecuting Primary Plaintiffs. Compl. at 18-19. Plaintiffs Corrine Love and J.L. assert that these acts constitute violations of their Fifth, Eighth, and Fourteenth Amendment rights. Compl. at 18-19.

As relief, first, Plaintiffs seek an award of compensatory damages jointly and severally against Defendants "for the physical, emotional and missed opportunities sustained as a result of

---

[11] It is unclear on the face of the Complaint who their brother was, or how the alleged acts of RICO caused his death.

the [Defendants'] misconduct." Compl. at 28. Second, Plaintiffs seek punitive damages against Defendants. And, third, Plaintiffs seek a declaratory judgment stating that (1) Primary Plaintiffs were racially profiled, and (2) Primary Plaintiffs were maliciously prosecuted. Compl. at 28.

Moving Defendants move to dismiss the Complaint, pursuant to Rule 12(b)(6), for failure to state a claim upon which relief can be granted. Additionally, State Defendants move to dismiss the Complaint, pursuant to Rule 12(b)(1), for lack of subject-matter jurisdiction. Plaintiffs oppose these motions.

After a partial briefing of Moving Defendants' motions to dismiss, the Court ordered Plaintiff Lemont Love to show cause why the claims he asserts on behalf of Plaintiff J.L. should not be dismissed without prejudice, because "a non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child." S*ee Osei-Afriyie*, 937 F.2d at 882-83 (quoting *Cheung*, 906 F.2d at 61). In response, Plaintiff Lemont Love requested that the motion to appoint *pro bono* counsel to represent Plaintiff J.L, then currently pending, be granted. On March 15, 2016, the Honorable Tonianne J. Bongiovanni, U.S.M.J., denied this motion; in her Letter Order, she noted that "serious questions exist regarding the merits of J.L.'s claims," and found that "[e]ven assuming, however, that J.L.'s claims have arguable merit in fact and law . . . the appointment of counsel is not warranted at this juncture under *Tabron*." Letter Order (Dkt. No. 44) at 2-3. Defendant Bergen County argues in its moving papers that Plaintiff J.L.'s claims should be dismissed without prejudice on the grounds that, as a minor, her claims may be tolled until she reaches adulthood. The remaining Moving Defendants do not address these issues in their moving papers.

## II.   Standard of Review

### A.  Rule 12(b)(1)

Rule 12(b)(1) mandates the dismissal of a case for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). An assertion of Eleventh Amendment immunity is a challenge to a district court's subject matter jurisdiction. *See Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693, n 2 (3d Cir. 1996) ("[T]he Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction.") (citing *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 98-100 (1984)). Typically, when jurisdiction is challenged pursuant to Rule 12(b)(1), the plaintiff bears the burden of persuading the court that subject matter jurisdiction exists. *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991). However, because "Eleventh Amendment immunity can be expressly waived by a party, or forfeited through non-assertion, it does not implicate federal subject matter jurisdiction in the ordinary sense," and therefore, a party asserting Eleventh Amendment immunity bears the burden of proving its applicability. *Christy v. Pennsylvania Turnpike Comm.*, 54 F.3d 1140, 1144 (3d Cir. 1994); *see also Carter v. City of Philadelphia*, 181 F.3d 339, 347 (3d Cir. 1999); *Maliandi v. Montclair State Univ.*, Civ. No. 14-01398, 2014 WL 3778259, at *1 (D.N.J. July 31, 2014).

In evaluating a Rule 12(b)(1) motion to dismiss, the court must determine whether the motion attacks the complaint as deficient on its face, or whether the motion attacks the existence of subject matter jurisdiction in fact, apart from any pleadings. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977). "In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (citing *Mortensen*, 549 F.2d at 891). However, "[i]n reviewing a factual attack, the

court may consider evidence outside the pleadings." *Gould*, 220 F.3d at 176 (citing *Gotha v. United States*, 115 F.3d 176, 178-79 (3d Cir. 1997)). Here, the motion before the Court involves a facial attack to subject matter jurisdiction, because it attacks the Complaint on its face. Therefore, on reviewing this question of sovereign immunity, the Court must only consider the Complaint, the exhibits attached to the Complaint, and any other documents referenced in the Complaint, in the light most favorable to Plaintiffs.

### B. Rule 12(b)(6)

Under Rule 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quotations omitted). Under such a standard, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

However, Rule 12(b)(6) only requires a "short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. The complaint must include "enough factual matter (taken as true) to suggest the required element. This does not impose a

probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips*, 515 F.3d at 234 (citation and quotations omitted); *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to set out in detail the facts upon which he bases his claim. The pleading standard is not akin to a probability requirement; to survive a motion to dismiss, a complaint merely has to state a plausible claim for relief.") (citation and quotations omitted). Moreover, where the plaintiff is proceeding *pro se*, the complaint should be "liberally construed," and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 93-94.

In sum, under the current pleading regime, when a court considers a dismissal motion, three sequential steps must be taken: first, "it must take note of the elements the plaintiff must plead to state a claim." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quotations omitted). Next, the court "should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (quotations omitted). Lastly, "when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (quotations and brackets omitted).

## III.    Analysis

### A.  Plaintiff J.L.'s Claims

Plaintiff Lemont Love attempts to bring claims against Defendants on behalf of his minor daughter, Plaintiff J.L., for violation of her Fifth, Eighth, and Fourteenth Amendment rights as a result of Defendants' alleged violation of Plaintiff Lemont Love's constitutional rights. However, "a non-attorney parent must be represented by counsel in bringing an action on behalf of his or her

child." S*ee Osei-Afriyie*, 937 F.2d at 882-83 (quoting *Cheung*, 906 F.2d at 61). Here, Plaintiff

Lemont Love does not assert that he is an attorney and his application for *pro bono* counsel to

represent Plaintiff J.L. has been denied. Accordingly, Plaintiff J.L.'s claims are dismissed without

prejudice, "to accrue for purposes of the relevant statutes of limitations when [she] reach[es]

eighteen years of age, or sooner if [she] become[s] [an] emancipated minor[]. *Osei-Afriyie*, 937

F.2d at 883.

### B.  Eleventh Amendment Immunity

State Defendants contend that Eleventh Amendment sovereign immunity bars Plaintiffs'

claims against the following Defendant entities: the State of New Jersey, the New Jersey State

Police, the Middlesex County Prosecutor's Office, the Monmouth County Prosecutor's Office, and

the Bergen County Prosecutor's Office (collectively, "State Agency Defendants"). Additionally,

State Defendants contend that Eleventh Amendment immunity bars Plaintiffs' claims against the

following individual Defendants in their official capacities: Acting Attorney General Hoffman,

Superintendent Fuentes, Trooper Castellani, Trooper Kepenis, Middlesex County Prosecutor

Carey, Middlesex County Prosecutor Berman, Middlesex County Assistant Prosecutor Kuberiet,

Monmouth County Prosecutor Gramiccioni, Monmouth County Assistant Prosecutor O'Donnell-

Voorman, and Bergen County Prosecutor Molinelli (collectively, "State Official Defendants").

The Eleventh Amendment to the United States Constitution provides that "[t]he judicial

power of the United States shall not be construed to extend to any suit in law or equity, commenced

or prosecuted against one of the United States by citizens of another state, or by citizens or subjects

of any foreign state." U.S. Const. amend. XI. The amendment affords states and state agencies

immunity from suits brought by citizens in federal court, regardless of whether legal or equitable

relief is sought. *Pennhurst,* 465 U.S. at 100-01; *see also Thorpe v. New Jersey*, 246 F. App'x 86,

14

87 (3d Cir. 2007) ("The Eleventh Amendment of the U.S. Constitution protects a state or state agency from a suit brought in federal court by one of its own citizens regardless of the relief sought. . . .").

Eleventh Amendment immunity from suit also extends to agencies, departments, and officials of the state when the state is the real party in interest. *Alabama v. Pugh*, 438 U.S. 781, 781 (1978); *Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d. Cir. 2002); *Chisolm v. McManimon*, 275 F.3d 315, 323 (3d Cir. 2001). In *Fitchik v. New Jersey Transit Rail Operations, Inc.*, the Third Circuit determined that the state is a party in interest when "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting or to compel it to act." 873 F.2d 655, 659 (3d. Cir. 1989). In short, sovereign immunity is appropriate if the named defendant is an "arm of the state." *Davis v. Twp. of Lakewood*, Civ. No. 03-1025 (MLC), 2005 U.S. Dist. LEXIS 16420, at *13 (D.N.J. Aug. 4, 2005) (citing *Chisolm*, 275 F.3d at 323). Suits against state officials in their official capacities are barred by the Eleventh Amendment, "because it is merely another way of pleading an action against the state." *Shahin v. Delaware*, 563 F. App'x 196, 198 (3d Cir. 2014); see also *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989). There are only three narrowly circumscribed exceptions that have been established to limit the breadth of the Eleventh Amendment: "1) congressional abrogation, 2) state waiver, and 3) suits against individual state officers for prospective relief to end an ongoing violation of federal law." *MCI Telecomm. Corp. v. Bell Atl. Pennsylvania*, 271 F.3d 491, 503 (3d Cir. 2001).

Here, Eleventh Amendment immunity clearly bars Plaintiffs' claims against State Agency Defendants because they are comprised of both the State of New Jersey, itself, and agencies of that

State. Moreover, because Plaintiffs do not seek prospective injunctive relief, their claims against State Official Defendants in their official capacities do not fall under this limited exception to Eleventh Amendment sovereign immunity.[12] Thus, because State Official Defendants are all officials of the State of New Jersey, Plaintiffs' claims against them in their official capacities are barred by the Eleventh Amendment. Indeed, Plaintiffs do not dispute that State Agency Defendants or State Official Defendants, in their official capacities, are immune from the present suit, instead they argue that they may bring suit against State Official Defendants in their individual capacities. Pls.' Br. in Opp'n to Defs.' Mot. to Dismiss Pls.' Compl. ("Pl. L. Love's Opp'n Br.") (Dkt. No. 27) at 3; Pls.' Br. in Opp'n to Defs.' Mot. to Dismiss Pls.' Compl. ("Pl. C. Love's Opp'n Br.") (Dkt. No. 45) at 3; Pls.' Br. in Opp'n to Defs.' Mot. to Dismiss Pls.' Compl. ("Pl. A. Love's Opp'n Br.") (Dkt. No. 46) at 3. In that regard, however, State Defendants do not assert that Eleventh Amendment immunity bars claims against State Official Defendants in their individual capacities. The claims against State Official Defendants in their individual capacities are addressed *infra*. Furthermore, Plaintiffs do not contend that congressional abrogation or state waiver applies to the

---

[12] Plaintiffs assert in their oppositions to State Defendants' motion to dismiss, that they "will be seeking injunctive relief against these defendants in their official capacities." Pl. L. Love's Opp'n Br. at 3; Pl. C. Love's Opp'n Br. at 3; Pl. A. Love's Opp'n Br. at 3. However, plaintiffs may not amend their pleadings through briefs. *McArdle v. Tronetti*, 961 F.2d 1083, 1089 (3d Cir. 1992); *Penn ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988); *Del Sontro v. Cendant Corp.*, Inc., 223 F. Supp. 2d 563, 581 (D.N.J. 2002). And, moreover, it is not clear what prospective relief Plaintiffs could request under the facts alleged. Regardless, even if Plaintiffs had requested prospective injunctive relief in the Complaint, this exception to Eleventh Amendment sovereign immunity would not apply, because they do not allege an ongoing violation of federal law by Defendants. *Pa. Fed'n of Sportsmen's Clubs, Inc.*, 297 F.3d at 324 (To determine whether an exception to the Eleventh Amendment sovereign immunity of a state official, sued in her official capacity, is appropriate, "a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.") (quoting *Verizon Maryland, Inc. v. Public Service Commission of Maryland*, 535 U.S. 635 (2002)).

sovereign immunity asserted in this case, nor could they. For these reasons, the Court finds that Plaintiffs' claims against State Agency Defendants and State Official Defendants, in their official capacities, are barred by Eleventh Amendment sovereign immunity and consequently, this Court lacks subject matter jurisdiction over the claims against these defendants.

### C. Plaintiff Corrine Love's Claims

Plaintiff Corrine Love alleges that her Fifth, Eighth, and Fourteenth Amendment rights were violated by Defendants, when she suffered "severe emotional distress," as a result of Defendants' violation of Plaintiff Andre Love's constitutional rights. Compl. at 19. Moving Defendants, however, contend that Plaintiff Corrine Love lacks standing to assert these § 1983 claims.[13] "To satisfy the 'case or controversy' standing requirement under Article III, a plaintiff must establish that he or she has suffered a cognizable injury that is causally related to the alleged conduct of the defendant and is redressable by judicial action." *Pa. Psychiatric Soc'y v. Green*

---

[13] Although the Complaint uses the phrase "intentional infliction of emotional distress" in the context of Plaintiff Corrine Love's claims, it makes no reference to state law, as done elsewhere in the Complaint, and couches her injury entirely in terms of constitutional rights violations. Thus, the Court construes Plaintiff Corrine Love's claims as § 1983 claims, rather than a New Jersey state law claim for intentional infliction of emotional distress. Nonetheless, even if the Court had construed her claims as such, Plaintiff Corrine Love has failed to state a claim upon which relief can be granted, because she has not alleged that Defendants acted with the intent to cause emotional distress or with deliberate disregard of the high degree of probability that their actions would cause emotional distress; and she has not alleged that she was present when Plaintiff Andre Love's rights were allegedly violated. *See Buckley v. Trenton Sav. Fund Soc.*, 111 N.J. 355, 366 (1988) ("Generally speaking, to establish a claim for intentional infliction of emotional distress, the plaintiff must establish intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe. Initially, the plaintiff must prove that the defendant acted intentionally or recklessly. For an intentional act to result in liability, the defendant must intend both to do the act and to produce emotional distress. Liability will also attach when the defendant acts recklessly in deliberate disregard of a high degree of probability that emotional distress will follow." Moreover, "[w]here such conduct is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress . . . to a member of such person's immediate family who is present at the time, whether or not such distress results in bodily harm.") (citations omitted).

*Spring Health Servs.*, 280 F.3d 278, 283 (3d Cir. 2002). In the jurisprudence of standing, a "litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties." *Powers v. Ohio*, 499 U.S. 400, 410 (1991); *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 474-75 (1982); *Wheeler v. Travelers Ins. Co.*, 22 F.3d 534, 538 (3d Cir. 1994). In that regard, it is well-established that a spouse has no standing to raise a § 1983 claim, based on violations of her husband's constitutional rights. *See Pagan v. Twp. of Raritan*, Civ. No. 04-1407 (FLW), 2006 U.S. Dist. LEXIS 63016, at *30 (D.N.J. Aug. 23, 2006) ("To be sure, a third party lacks standing to bring claims under § 1983 for violation of the constitutional rights of another."); *Pahle v. Colebrookdale Twp.*, 227 F. Supp. 2d 361, 381 (E.D. Pa. 2002) ("It is well-established that a spouse . . . has no standing to raise § 1983 claims resting on violations of her husband's constitutional rights.").

In short, Plaintiff Corrine Love has no standing to assert claims under § 1983, arising from Defendants' alleged violation of her husband's constitutional rights. Indeed, she may only assert § 1983 claims based on injuries that she herself suffered. Under the facts alleged, Plaintiff Corrine Love's only arguably direct injury from Defendants' alleged actions are the loss of consortium and companionship that she experienced during her husband's imprisonment. However, "there exists no constitutional interest in the consortium of one's spouse" and therefore, "such a claim cannot sustain an action pursuant to § 1983." *Pagan v. Twp. of Raritan*, Civ. No. 04-1407 (FLW), 2006 U.S. Dist. LEXIS 63016, at *36 (D.N.J. Aug. 23, 2006). Accordingly, Plaintiff Corrine Love has not alleged the deprivation of a constitutional right, and thus lacks standing to bring her § 1983 claims. These claims are dismissed with prejudice.

### D.  Statutes of Limitations

Regarding Primary Plaintiffs' remaining claims, State Defendants and Defendant Bergen County contend that the following claims are barred by the relevant statutes of limitations: (1) their § 1983 claims arising from selective enforcement, illegal search and seizure, false arrest, deliberate indifference, and cruel and unusual punishment, in contravention of the Fourth, Fifth, Eighth, and Fourteenth Amendments; (2) their state law claims of wrongful imprisonment, racial discrimination, and intentional infliction of emotional distress; and (3) their federal civil RICO claims.[14] Primary Plaintiffs counter that the statutes of limitations as to their claims should be tolled, pursuant to the discovery rule and as a matter of equity. And, furthermore, Primary Plaintiffs contend that their RICO claims are not outside the applicable statute of limitations.

To succeed on a motion to dismiss on the basis of statute of limitations, the defendant must demonstrate that "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (quoting *Robinson v. Johnson*, 313 F.3d 128, 134-35 (3d Cir. 2002)). "However, [i]f the [time] bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." *Schmidt*, 770 F.3d at 249 (quoting *Johnson*, 313 F.3d at 134-35) (quotations omitted).

Under New Jersey law, there is a two-year statute of limitations period for personal-injury torts. N.J. Stat. Ann. § 2A:14-2. Thus, Primary Plaintiffs' claims under state law for wrongful imprisonment, racial discrimination, and intentional infliction of emotional distress fall under this

---

[14] Moving Defendants do not assert, however, that Primary Plaintiffs' state law or § 1983 claims relating to the alleged malicious prosecution are barred by the relevant statute of limitations. Indeed, malicious prosecution claims do not accrue "until the criminal proceedings have terminated in the plaintiff's favor." *Heck v. Humphrey*, 512 U.S. 477, 489 (1994).

two-year statute of limitations period. In addition, a § 1983 claim is characterized as a personal-injury claim, and thus, is governed by the applicable state's statute of limitations for personal-injury claims. *Wallace v. Kato,* 549 U.S. 384, 387, 127 S. Ct. 1091, 166 L. Ed. 2d 973 (2007); *see also Cito v. Bridgewater Township Police Dept.*, 892 F.2d 23, 25 (3d Cir. 1989). Therefore, as is the case here, a personal-injury tort claim, under § 1983, arising in New Jersey, also has a two-year statute of limitations. *See Cito*, 892 F.2d at 25. Finally, as to Primary Plaintiffs' federal civil RICO claims, the Supreme Court has held that a four-year statute of limitations applies to such claims. *Forbes v. Eagleson*, 228 F.3d 471, 483 (3d Cir. 2000) (citing *Agency Holding Corp. v. Malley-Duff & Assoc.*, 483 U.S. 143, 156 (1987)).

The limitations period as to Primary Plaintiffs' claims begins to run on the accrual date. Federal law governs a cause of action's accrual date. *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009). Under federal law, a claim accrues when the facts which support the claim reasonably should have become known to the plaintiff. *Sameric Corp. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998); *Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 507 (3d Cir. 2006) (quoting *Mathews v. Kidder Peabody & Co.*, 260 F.3d 239, 252 (3d Cir. 2001)); *see also Large v. County of Montgomery*, 307 F. App'x 606, 606 (3d Cir. 2009). "The determination of the time at which a claim accrues is an objective inquiry; [courts] ask not what the plaintiff actually knew but what a reasonable person should have known." *Kach,* 589 F.3d at 634. Importantly, accrual is not tied to whether the potential claimant knew or should have known that the injury constitutes a legal wrong. *Giles v. City of Philadelphia*, 542 F. App'x 121, 123 (3d Cir. 2013) (citing *Sandutch v. Muroski*, 684 F.2d 252, 254 (3d Cir.1982). Rather, "a cause of action accrues when the fact of injury and its connection to the defendant would be recognized by a reasonable person." *Kriss v. Fayette Cty.*, 827 F. Supp. 2d 477, 484 (W.D. Pa. 2011) *aff'd*, 504 F. App'x 182 (3d Cir. 2012).

20

Accordingly, "[a]s a general matter, a cause of action accrues at the time of the last event necessary to complete the tort, usually at the time the plaintiff suffers an injury." *Kach*, 589 F.3d at 634.

In addition, state law, unless inconsistent with federal law, governs whether a limitations period should be tolled. *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010). Under New Jersey law, a statute of limitations can be tolled based upon equitable principles, such as the discovery rule. *Freeman v. State*, 347 N.J. Super. 11, 28 (N.J. App. Div. 2002). The discovery rule postpones accrual of a claim where a plaintiff is reasonably unaware that he has suffered an injury or, even though he is aware of the injury, [he is reasonably unaware] that it was the fault of an identifiable person." *See Caravaggio v. D'Agostini*, 166 N.J. 237, 246 (N.J. 2001). "As set out by the New Jersey Supreme Court, the accrual of the claim will be postponed until the 'injured party discovers, or by exercise of reasonable diligence and intelligence should have discovered[,] that he may have a basis for an actionable claim.'" *Dique*, 603 F.3d at 185 (quoting *Lopez v. Swyer*, 62 N.J. 267, 270 (N.J. 1973)) (brackets in original); *see also Lapka v. Porter Hayden Co.*, 162 N.J. 545, 554 (N.J. 2000). In other words, "[t]he discovery rule prevents the statute of limitations from running when injured parties reasonably are unaware that they have been injured, or, although aware of an injury, do not know that the injury is attributable to the fault of another." *Kendall v. Hoffman-La Roche, Inc.*, 209 N.J. 173, 191 (N.J. 2012) (quoting *Baird v. Am. Med. Optics*, 155 N.J. 54, 66 (N.J. 1998). In circumstances where the relationship between a plaintiff's injury and defendant's fault is not self-evident, "it must be shown that a reasonable person, in plaintiff's circumstances, would have been aware of such fault in order to bar her from invoking the discovery rule." *Kendall*, 209 N.J. at 192.

To begin, Primary Plaintiffs' claims under § 1983 or state law for selective enforcement, illegal search and seizure, deliberate indifference, and intentional infliction of emotional distress

accrued at the time of Primary Plaintiffs' January 17, 1998 traffic stop and arrest. *See Dique*, 603 F.3d at 188 (A "selective-enforcement claim will accrue at the time that the wrongful act resulting in damages occurs."); *Borrello v. Elizabeth Bd. of Educ.*, Civ. No. 14-3687 (JLL) (JAD), 2014 U.S. Dist. LEXIS 97345, at *27 (D.N.J. July 17, 2014) (A claim for intentional infliction of emotional distress accrues on the date of the injuring incident.); *Baker v. Barnes*, Civ. No. 11-0992 (JAP), 2012 U.S. Dist. LEXIS 3751, at *15 (D.N.J. Jan. 12, 2012) (A claim for deliberate indifference accrues at the time the wrongdoing allegedly occurred.); *Evans v. Formentin*, Civ. No. 12-962 (DRD), 2012 U.S. Dist. LEXIS 144304, at *7 (D.N.J. Oct. 4, 2012) (Illegal search and seizure claims accrue on the date of the allegedly illegal search.). Indeed, Primary Plaintiffs concede that these claims accrued on January 17, 1998, the day of their arrest. Pl. L. Love's Opp'n Br. at 22; Pl. A. Love's Opp'n Br. at 22. Thus, under the two-year statute of limitations, these claims should have been filed on January 17, 2000 to be timely. Primary Plaintiffs filed their Complaint on May 29, 2014, well outside this deadline.

In addition, Primary Plaintiffs' claims under § 1983 and state law for false arrest and false imprisonment accrued "at the time the [Primary Plaintiffs] [became] detained pursuant to legal process," because by definition, their alleged false arrest and false imprisonment lasted only as long as they were detained without legal process. *Wallace*, 549 U.S. at 397. The victim of a false arrest and false imprisonment becomes held pursuant to legal process "when, for example, he is bound over by a magistrate or arraigned on charges." *Id.* at 389. Thus, although the Complaint does not allege the exact date that Primary Plaintiffs became held pursuant to legal process, these causes of actions accrued sometime between the date of Primary Plaintiffs' arrest, January 17, 1998, and the dates they pled guilty to possession with intent to distribute, i.e., March 9, 1998 as to Plaintiff Andre Love and March 11, 1999 as to Plaintiff Lemont Love. Accordingly, to bring

22

these claims within the two-year statute of limitations, at the very latest, Plaintiff Andre Love would have needed to assert his claims by March 9, 2000, and Plaintiff Lemont Love would have needed to assert his claims by March 11, 2001. Therefore, Primary Plaintiffs bring these claims well outside the deadline of the statute of limitations.

In their opposition briefs, Primary Plaintiffs assert that their claims for selective enforcement, illegal search and seizure, deliberate indifference, intentional infliction of emotional distress, false arrest, and false imprisonment should be tolled pursuant to the discovery rule. However, the discovery rule is not applicable to these claims, because under the facts alleged, Primary Plaintiffs were aware, or should reasonably have been aware, of their injury and the fault of Trooper Defendants on the day of their arrest. According to the Complaint, Primary Plaintiffs were arrested by Trooper Defendants for "no apparent reason." Compl. at 13. Then, allegedly without any justification, Primary Plaintiffs and their car were searched by Trooper Defendants, "but nothing was recovered." Compl. at 13. However, despite the fact that nothing was recovered from these searches, according to the Complaint, Primary Plaintiffs were arrested by Trooper Defendants for possession with intent to distribute. Compl. at 13. Based on these alleged facts, because Primary Plaintiffs were innocent of any wrongdoing, they should have known, by exercise of reasonable diligence and intelligence that they had been injured by Trooper Defendants' actions,[15] and furthermore, that Trooper Defendants did not have probable cause to search or arrest

---

[15] Contrast this case with *Dique v. N.J. State Police*, in which the Third Circuit found that a plaintiff's selective-enforcement claim did not accrue, under the discovery rule, until "his attorney became aware of the extensive documents describing the State's pervasive selective-enforcement practices." *Dique*, 603 F.3d at 188 (3d Cir. 2010). Under the facts of *Dique*, the plaintiff was "reasonably unaware of his injury because [the arresting officer] purported to stop his car for a speeding violation." *Id*. Conversely, here, because according to the pleadings, Trooper Defendants gave no reason for the arrest and falsely claimed to have discovered controlled substances in their

them. Importantly, "legal certainty" is not required for a claim to accrue under the discovery rule -- "a plaintiff need not be informed by an attorney that a viable cause of action exists, nor does a plaintiff need to understand the legal significance of the facts" for a claim to accrue. *Kendall*, 209 N.J. at 193 (citations omitted). Therefore, the fact that Primary Plaintiffs did not understand that their constitutional rights may have been violated at the time of the search and arrest is of no moment in the discovery rule analysis. Rather, Primary Plaintiffs were aware, or reasonably should have been aware, of the injury allegedly inflicted by Trooper Defendants at the time it occurred. Thus, Primary Plaintiffs' claims springing from their January 17, 1998 injuries are not tolled under the discovery rule.

Moreover, even assuming that Primary Plaintiffs' claims of selective enforcement and racial discrimination should be tolled until they discovered, or reasonably should have discovered, the state police's racial profiling policy, any reasonably diligent plaintiffs in their circumstances would have discovered evidence of this policy well before May 29, 2012 (two years before the filing of the Complaint). According to the exhibits attached to the Complaint, on April 19, 2002, the State of New Jersey publically moved to dismiss a large number of indictments and vacate a large number of convictions, based on the state police's habit of racially profiling drivers on the New Jersey Turnpike, during the time of Primary Plaintiffs' arrest. Compl. Ex. C. Under the facts alleged, Primary Plaintiffs should have already been aware, at the time they were arrested that Trooper Defendants did not have probable cause to search and detain them. In such circumstances, a reasonably diligent plaintiff would have conscientiously gathered any public information regarding unconstitutional practices employed by the state police, and reasonably would have

---

search, Primary Plaintiffs were aware, at the time of the arrest, that they had been injured by Trooper Defendants.

discovered such information at least within ten years of its publication. Thus, even assuming that Primary Plaintiffs' selective enforcement and racial discrimination claims should be tolled until they discovered or reasonably should have discovered the state police's racial profiling policy, Primary Plaintiffs still brought these claims outside the two-year statute of limitations deadline.

Additionally, Primary Plaintiffs contend that the statute of limitations as to their claims of selective enforcement, illegal search and seizure, deliberate indifference, intentional infliction of emotional distress, false arrest, and false imprisonment should be equitably tolled until the dates their convictions were overturned, because their guilty pleas barred them from asserting such claims as a matter of law. Pl. L. Love's Opp'n Br. at 22; Pl. C. Love's Opp'n Br. at 22; Pl. A. Love's Opp'n Br. at 22. However, the Supreme Court expressly rejected this tolling theory in *Wallace v. Kato*. 549 U.S. 384 (2007); *see also Williams v. Trenton Police Dep't,* 591 F. App'x 56, 58 (3d Cir. 2015). The plaintiff in *Wallace* had been convicted of a crime (murder), but the charges against him were later dismissed based on a lack of probable cause for his arrest. *Wallace*, 549 U.S. at 386-87. The *Wallace* plaintiff subsequently sued the City of Chicago and his arresting police officers for false arrest and false imprisonment under § 1983. *Id.* at 387. Making an argument identical to that of Primary Plaintiffs, the *Wallace* plaintiff asserted that his false arrest and imprisonment causes of action did not accrue until the criminal charges were dropped, because until his conviction was overturned, he was barred by the Supreme Court's ruling in *Heck v. Humphrey*, 512 U.S. 477 (1994), from bringing civil claims under § 1983 that would impugn his outstanding conviction. *Wallace*, 549 U.S. at 392.

Ultimately, the Supreme Court in *Wallace* could find no Illinois state law to support this novel tolling theory, and declined to adopt a federal tolling rule to this effect. *Id.* at 394. As the Supreme Court explained:

> Under such a regime, it would not be known whether tolling is appropriate by reason of the *Heck* bar until it is established that the newly entered conviction would be impugned by the not-yet-filed, and thus utterly indeterminate, § 1983 claim. It would hardly be desirable to place the question of tolling *vel non* in this jurisprudential limbo, leaving it to be determined by those later events, and then pronouncing it retroactive. Defendants need to be on notice to preserve beyond the normal limitations period evidence that will be needed for their defense; and a statute that becomes retroactively extended, by the action of the plaintiff in crafting a conviction-impugning cause of action, is hardly a statute of repose.

*Id.* at 394-95. Because, here, Primary Plaintiffs have not brought to my attention, nor am I aware of, any New Jersey cases providing tolling in even remotely comparable circumstances, and because there is no federal tolling in this context, *see Williams,* 591 F. App'x at 58, Primary Plaintiffs' causes of action that accrued prior to their conviction were not tolled by their guilty pleas.

Regarding Primary Plaintiffs' federal civil RICO claims, in determining when a RICO claim accrues, the Third Circuit applies the discovery rule, "whereby a RICO claim accrues when plaintiffs knew or should have known of their injury." *Cetel*, 460 F.3d at 507 (quoting *Mathews*, 260 F.3d at 252). Like New Jersey's discovery rule, the Third Circuit's discovery rule has "both subjective and objective components and, with respect to the subjective, a claim accrues no later than when the plaintiffs themselves discover their injuries.'" *Cetel*, 460 F.3d at 507 (quotations omitted). With respect to the objective components, the court "determine when plaintiffs should have known of the basis of their claims, which depends on whether [and when] they had sufficient information of possible wrongdoing to place them on inquiry notice or to excite storm warnings of culpable activity." *Id.* (quotations and citation omitted). A claim does not accrue until a reasonably diligent plaintiff would have discovered the violation. *Merck & Co. v. Reynolds*, 559 U.S. 633, 653 (2010).

Here, because Primary Plaintiffs' claims for RICO violations arise from, among other things, their alleged false arrest, false imprisonment, and the fabrication of evidence by Trooper Defendants, Primary Plaintiffs' RICO claims accrued when they knew or should have known of these injuries. As explained *supra*, under the facts alleged, Primary Plaintiffs either knew or should have known of these injuries when they occurred, on January 17, 1998. Thus, Primary Plaintiffs should have filed their RICO claims by January 17, 2002, within four years of the date of their injuries, to timely bring these claims.

In their opposition, Primary Plaintiffs, mistakenly rely on obsolete Third Circuit law to argue that the limitations period for a RICO claim starts to run from the time that they knew or should have known of the last predicate act of the alleged pattern of racketeering. Under such a rule, Primary Plaintiffs' RICO claims would arguably run from March 14, 2013, the date of the last alleged predicate act.[16] Compl. 20. However, in *Klehr v. A.O. Smith Corp.*, the Supreme Court rejected the last predicate act rule, finding that it "conflicts with a basic objective--repose--that underlies limitations periods." 521 U.S. 179, 187 (1997). As the Supreme Court explained, such a rule "would permit plaintiffs who know of the defendant's pattern of activity simply to wait, sleeping on their rights as the pattern continues and treble damages accumulate, perhaps bringing suit only long after the memories of witnesses have faded or evidence is lost." *Id.* (citations and quotations omitted). Thus, the fact that the alleged date of the last predicate act was within four years of the date the Complaint, does not save Primary Plaintiffs' RICO claims from being time-barred, particularly because Primary Plaintiffs' alleged injuries resulting from the alleged RICO all occurred more than four years before they filed their Complaint. *See Id.* at 190 (Plaintiffs cannot

---

[16] The Court notes that it is unclear on the face of the Complaint, exactly what predicate acts are alleged to have occurred on this date.

argue "separate accrual" of RICO acts, where they "have not shown how any new act could have caused them harm over and above the harm that the earlier acts caused.").

Finally, with respect to Primary Plaintiffs' claims of cruel and unusual punishment under § 1983, I note that the Eighth Amendment applies only to Primary Plaintiffs' post-conviction imprisonment, not the time before imprisonment, or the time after they had served their sentences. *Graham v. Connor*, 490 U.S. 386, 395 n. 10 (1989); *see also Bergdoll v. City of York*, 515 F. App'x 165, 171 (3d Cir. 2013). Primary Plaintiffs fail to allege any conduct relating to that time period. However, even assuming that the Complaint contained allegations from Primary Plaintiffs' terms of imprisonment that amounted to cruel and unusual punishment under the Eighth Amendment, they had completed their sentences well over two years before filing the present Complaint. According to the exhibits attached to the Complaint, Plaintiff Andre Love was sentenced to five years of probation on December 18, 1998. Compl. Ex. A. Thus, at the latest, Plaintiff Andre Love completed his sentence by December 18, 2003. Similarly, at the latest, Plaintiff Lemont Love completed his sentence by May 14, 2004, because he was sentenced on May 14, 1999 to five years of imprisonment. Compl. Ex. A. In short, at the latest, the statute of limitations expired as to any of Plaintiff Andre Love's cruel and unusual punishment claims by December 18, 2005, and as to Plaintiff Lemont Love's claims by May 14, 2006. Consequently, Primary Plaintiffs' Eighth Amendment § 1983 claim is time-barred.

In sum, the statute of limitations has expired as to the following claims: (1) the § 1983 claims arising from selective enforcement, illegal search and seizure, false arrest, deliberate indifference, and cruel and unusual punishment, in contravention of the Fourth, Fifth, Eighth, and Fourteenth Amendments; (2) the state law claims of wrongful imprisonment, racial discrimination,

and intentional infliction of emotional distress; and (3) the federal civil RICO claims. Accordingly, these claims asserted by Primary Plaintiffs are dismissed with prejudice.

### E.  Malicious Prosecution

With both the Eleventh Amendment sovereign immunity bar to Primary Plaintiffs' claims against State Agency Defendants and State Official Defendants, in their official capacities, and the relevant statutes of limitations bar to the bulk of Primary Plaintiffs' claims, Primary Plaintiffs' only remaining claims against Moving Defendants are their claims for malicious prosecution, under both New Jersey state law and § 1983, against State Official Defendants, in their individual capacities, and against Bergen County and Monmouth County, which are not state entities.

A § 1983 claim for malicious prosecution requires that the plaintiff allege the following:

> (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009). The first four elements listed above comprise the New Jersey common law tort of malicious prosecution. *Avalos-Palma v. United States*, Civ. No. 13-5481(FLW), 2014 U.S. Dist. LEXIS 96499, at *38 (D.N.J. July 16, 2014) (citing *LoBiondo v. Schwartz*, 199 N.J. 62, 90, 970 A.2d 1007 (N.J. 2009)).

Here, Primary Plaintiffs have failed to allege the second element of a malicious prosecution claim under both § 1983 and New Jersey state law -- that their prosecution was terminated favorably. "The purpose of the favorable termination requirement is to avoid 'the possibility of the claimant [sic] succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction.'" *Kossler*, 564 F.3d at 187 (quoting

29

*Heck,* 512 U.S. at 484) (alteration in original). Accordingly, the Third Circuit has ruled that "a malicious prosecution claim cannot be predicated on an underlying criminal proceeding which terminated in a manner not indicative of the innocence of the accused." *Kossler*, 564 F.3d at 187. And, as is the case here, "[a] conviction vacated because of colorable issues of racial profiling does not establish that plaintiff is innocent of the crime charged in the underlying prosecution." *Hilton v. Whitman*, Civ. No. 04-6420(SDW), 2008 U.S. Dist. LEXIS 102157, at *35 (D.N.J. Dec. 15, 2008*)* (citing New Jersey District Court cases finding that conviction vacated due to colorable issues of racial profiling did not constitute favorable termination).

According to the exhibits attached to the Complaint, upon motion of the Office of the Attorney General, Primary Plaintiffs' convictions were vacated after it was determined that their cases fell "within the relevant time frame for which defendants making such claims had made a colorable basis showing, entitling them to selective enforcement discovery." Compl. Ex. C. Thus, "[r]ather than litigating the issues of selective enforcement, whether generally or specifically," the State of New Jersey moved, "in the interests of justice" to vacate Primary Plaintiffs' convictions. Compl. Ex. C. In his order vacating Plaintiff Lemont Love's conviction, the Honorable Alan A. Rockoff, J.S.C., relied entirely on the justifications given in the State of New Jersey's motion. Compl. Ex. D. Similarly, the Honorable Eugene H. Austin, J.S.C., vacated Plaintiff Andre Love's conviction solely "based on a claim of racial profiling" and the State's request for relief. Compl. Ex. D.

Thus, the orders vacating Primary Plaintiffs' convictions, do not "indicate [their] innocence of the alleged misconduct underlying the offenses charged." *See Kossler*, 564 F.3d at 188. Nor have Primary Plaintiffs alleged any facts indicating, that despite the explicit language to the contrary on the face of the orders and motion papers, their convictions were overturned, in

actuality, because Judge Rockoff and Judge Austin had determined innocence. Indeed, Primary Plaintiffs, in the present civil action, for the first time assert their actual innocence of the crimes to which they pled guilty and for which they were convicted. At no point during the prior criminal proceedings are Primary Plaintiffs alleged to have asserted their innocence or disputed the veracity of their guilty pleas. And thus, when Primary Plaintiffs convictions were eventually vacated, it was not on the basis of their actual innocence, but on the basis of colorable issues of racial profiling and in the interests of judicial economy. This late assertion of innocence is not a basis to allege that their criminal proceedings ended in a favorable termination. Indeed, such a ruling would conflict with the resolution of Primary Plaintiffs' underlying criminal prosecution, in contravention of the Supreme Court's ruling in *Heck. See Kossler*, 564 F.3d at 187.

Primary Plaintiffs have failed to allege a favorable termination of their criminal proceedings. Accordingly, Primary Plaintiffs' malicious prosecution claims under both § 1983 and New Jersey state law are dismissed with prejudice.[17]

---

[17] I need not reach the element of probable cause in this Opinion, because I have already made a finding that there was no favorable termination of Primary Plaintiffs' conviction. *See Kossler*, 564 F.3d at 194. However, I note that although Primary Plaintiffs allege that Trooper Defendants and Defendant Voorman-O'Connell fabricated evidence of Primary Plaintiffs' guilt, they fail to allege that their guilty pleas were in any way coerced or involuntary. *See Freeman*, 347 N.J. Super. 11, 26 (N.J. App. Div. 2002) ("Probable cause is established conclusively by a conviction, even if reversed on appeal, so long as the conviction was not obtained by fraud, perjury or other corrupt means.") (quotations omitted).Without such allegations, Primary Plaintiffs cannot assert that they were innocent of the crimes to which they pled guilty. And consequently, Primary Plaintiffs cannot assert that the proceedings were initiated without probable cause -- the third element of a malicious prosecution claim under both § 1983 and New Jersey state law

## IV.    Conclusion

For the foregoing reasons, Moving Defendants' motions to dismiss are granted.[18] Plaintiff J.L.'s claims are dismissed without prejudice, because a non-attorney parent may not bring claims on behalf of his minor child. All claims against State Agency Defendants and State Official Defendants, in their official capacities, are barred by Eleventh Amendment sovereign immunity and are dismissed with prejudice for lack of subject matter jurisdiction. Plaintiff Corrine Love's claims are dismissed with prejudice for lack of standing. Primary Plaintiffs' remaining claims, except for their claims of malicious prosecution, are dismissed with prejudice, under the applicable statutes of limitations. And, finally, Primary Plaintiffs' claims for malicious prosecution are dismissed with prejudice, for failure to state a claim.

The Court notes, however, that Primary Plaintiffs' claims against Defendant Middlesex County shall proceed, because Defendant Middlesex County has not moved to dismiss such claims.

Date: May 26, 2016

_____
/s/ Freda L. Wolfson
Freda L. Wolfson
U.S. District Judge

---

[18] Moving Defendants assert a number of other arguments as to why the Complaint should be dismissed under Rule 12(b)(6), however I need not reach these arguments in this Opinion, because I have dismissed the claims against Moving Defendants on other grounds.